Tiedtke, Exr., et al., Appellees, v. Tiedtke et al., Appellants.

(No. 4519—Decided April 16, 1951.)

*Messrs. Marshall, Melhorn, Bloch & Belt, Messrs. Baker, Hostetler & Patterson, Mr. Dwight B. Buss* and *Mr. Harley A. Watkins,* for appellees.

*Messrs. Ohlinger, Koles, Wolf & Flues* and *Mr. John S. Brumback,* for appellants.

CARPENTER, J. This appeal on questions of law and fact brought to this court from the Probate Court an action for the construction of the last will and testament and its three codicils of Harry Tiedtke. It is the second action filed for that purpose. Harry Tiedtke died July 21, 1924, leaving a daughter, Justina Margaret Tiedtke, then nineteen years old, his only child and heir. She married defendant John B. Millas in 1930, and they resided in California. In 1942, under the laws of that state, they adopted defendant Robert Millas, who was then three weeks old. Justina Margaret Tiedtke died intestate in 1946 leaving Robert as her only child, and her husband, John B. Millas. They will be referred to as the "Millas interests."

Two brothers and two sisters survived the testator. They have since died leaving five children, one grandchild, and the widow of one brother, who are defendants herein and will be referred to as the "Tiedtke interests."

The problem is: Which of these interests under the will and codicils now take the corpus and accumulated income of the trust, the income of which went to the testator's daughter during her lifetime? The answer to this requires an involved but undisputed statement of facts.

The Tiedtke will was executed November 25, 1921. The first ten items provide for payment of debts and specific bequests. In item 11, testator bequeathed all the residue in trust for his daughter Justina. It empowered the trustees, his brothers, to handle the trust and to advance to the daughter such sums as in their judgment were necessary "for her support, comfort and happiness." They were directed to transfer to

her one-half of the property of the trust when she was thirty years old and the other half when she was forty, "to be hers absolutely." Then the will provides:

"In case of the death of my said daughter, Justina Margaret Tiedtke, before coming into the possession of any part of said trust estate leaving no children, then such portion of said trust estate shall be divided among my heirs at law."

January 10, 1924, by codicil, he provided in item 1:

"In the provision made in my said last will and testament for my daughter, Justina Tiedtke, it is my desire that she be paid only, the net income each year, during her life, from the property given to her in said last will and testament, instead of it being given to her at the time stated in said last will and testament."

Items 2 and 3 of this codicil, and a second codicil dated February 6, 1924, are unimportant in this connection. A third codicil, executed March 1, 1924, provides:

"I, Harry Tiedtke, desire that, before any distribution is made of my estate, it be arranged that my daughter, Justina Tiedtke, receive the income from one hundred and fifty thousand ($150,000) dollars during her lifetime."

Apparently some complications arose in the administration of the estate and in 1928 the brothers, Charles and Ernest Tiedtke, as executors and trustees under the will, brought an action in the Court of Common Pleas under Section 10857, General Code, asking the direction of that court and its judgment in construing certain parts of the will and the three codicils. That section provided as follows:

"An executor, administrator, guardian, or other trustee, may maintain an action in the Court of Common Pleas against the creditors, legatees, distributees, or other parties, asking the direction or judgment of

the court in any matter respecting the trust, estate. or property to be administered, and the rights of the parties in interest, in the manner, and as fully, as formerly was entertained in courts of equity.''

Only a part of the petition in that action is in this record as an exhibit attached to this petition, but the whole journal entry of the judgment is in the record and is thereby brought to the attention of this court. It was entered July 10, 1929. After finding due process upon all defendants, the material part said:

''Upon consideration thereof, the court finds and adjudges the true intention of said will and the three codicils to be as follows, to wit: [then follows in Sections 1 and 2 detailed construction of the intention of the testator as to the administration of the trust for the daughter and the payment of legacies].
''* * *

''3. That it was further the intention of the testator that any residue of his estate, real or personal or mixed, remaining after the payment of debts, the establishment of the trust referred to in section 1 hereof, and the payment of said legacies, should be held in trust and disposed of in the manner stated in item 11 of the original will as amended by the first codicil thereto.

''That it was further the intention of the testator that in the event his said daughter, Justina Margaret Tiedtke died, leaving a child or children surviving her, both the principal and the income then constituting the trust property referred to in item 11 of the original will (as amended by the first codicil), should be paid to the said child or, in case more than one child survived her, then to said children, share and share alike; and in the event that his said daughter, Justina Margaret Tiedtke, died leaving no child or children surviving her, the principal and income then constituting the trust property referred to in item 11 of the origi-

nal will (as amended by the first codicil) should be divided among the testator's heirs at law, that is to say, the persons who would then be his heirs at law if he had not died until that date, namely, the date of the death of Justina Margaret Tiedtke, leaving no child or children surviving her.''

Paragraph 5 of that journal entry provided:

''5. All questions relative to the construction and meaning of said original will and codicils thereto, not herein answered and disposed of are reserved by the court for further consideration and determination, and for such purposes the court retains jurisdiction of this cause.''

In 1947, the Common Pleas Court ''on motion of Ernest Tiedtke, as sole executor under the last will and testament of Harry Tiedtke, deceased, and for good cause shown'' ordered the above-quoted paragraph 5 of the journal entry dated July 10, 1929, ''vacated and set aside.''

On June 23, 1948, this action was commenced in the Probate Court by Ernest Tiedtke as executor and The Toledo Trust Company as trustee of the last will and testament of Harry Tiedtke, deceased.

It is not apparent why the plaintiffs herein did not proceed in the 1928 action in Common Pleas Court when it had retained jurisdiction for that purpose. Section 10504-66, General Code, continued the jurisdiction of that court in such matter and extended it to the Probate Court.

In their petition, they allege that in 1931, after payment of debts, taxes and expenses of the estate, the executors filed their final account; that there remained ''value of less than $150,000, namely, $147,257.01,'' which was turned over to The Toledo Trust Company as trustee under the Harry Tiedtke will; that the trust company has since administered that trust and, during the lifetime of Justina Tiedtke Millas paid to

her the net income therefrom; and that there remained in its hands some undistributed income which accrued before the death of Justina and what had accrued since, and the corpus of the trust.

The trustee asks what it shall do with these funds.

The estate of Justina claims the income which accrued prior to her death, and Robert Millas claims the remainder of the income and the corpus of the trust. The Tiedtke interests claim all the funds in the hands of the trustee. They assert that the accrued income is theirs because it had not "come into the possession of" Justina, and that the corpus of the trust is theirs as heirs at law of the testator. Both claims are made under the last paragraph of item 11, quoted above.

The Tiedtke interests contend that the construction of the will made in the 1929 judgment, as to who should take the trust on the death of the daughter Justina, is not now binding upon this court or upon them—in other words, that that matter is not now *res judicata.*

That court had jurisdiction of the subject of the action—the construction of the will and codicils of Harry Tiedtke. It had before it all the parties interested in the matter, and they represented all those who are parties herein. In fact, two brothers in representative capacities commenced that action and apparently guided its course before the court. As before stated, this record does not contain a copy of the petition in that action. There is appended to this petition what purports to be a copy of "paragraph IV" of that petition, which asked the court certain specific questions. What the rest of the petition contained or what it prayed for is not in this record. The parties thereto were the predecessors in interest of the Tiedtke interests here. It must be presumed that the court in its judgment responded to what it was asked to do and what the facts warranted, and no appeal or

error was prosecuted from its judgment. Accordingly, this court is of the opinion that that judgment is binding upon it and the parties herein. In the language of the street, they made that bed and now they will have to lie in it; that is what is meant by *res judicata*.

Speaking of the verity of a judgment, Judge Ranney, in *Bank of Wooster v. Stevens,* 1 Ohio St., 233, 235, 59 Am. Dec., 619, said:

"It is a record of the highest character, importing absolute verity, and works a conclusive estoppel upon parties and privies, to aver or prove anything against it. It speaks for itself, and when it has spoken, the parties to it at least, are bound to be silent."

The last word in Ohio upon the principle of *res judicata* was spoken by Judge Hart in *Vasu v. Kohlers, Inc.,* 145 Ohio St., 321, 344, 61 N. E. (2d), 707, 166 A. L. R., 855. His reasoning was condensed and carried into the syllabus in paragraph five as follows:

"A right, question or fact in issue which was necessarily determined by a court of competent jurisdiction in a judgment which has become final, cannot be disputed or litigated in a subsequent suit between the same parties, although the subsequent suit is based upon a different cause of action."

By the 1928 judgment, the succession to the property in question is to be determined as of "the date of the death of Justina Margaret Tiedtke." If she left a child surviving her, it takes the property; if not, it goes to the heirs at law of the testator.

Our courts have told us many times that the course of descent and distribution is subject to legislative control, and that laws governing that subject may be changed at the pleasure of the Legislature. 14 Ohio Jurisprudence, 99, Section 7.

In *Smith v. Hunter, Trustee,* 86 Ohio St., 106, 99 N. E., 91, a testator died in 1841. Portions of his estate

were devised in trust for the use of his daughters during life "with fee simple to the heirs of said daughters." One daughter never had a child, but in 1876, while a resident of Indiana, adopted a child under the laws of that state. She died in 1908 and the adopted child took the remainder. In 1841, when the will was made, neither Ohio nor Indiana had any statute for the adoption of children. The same argument made here was made there by the blood heirs of the testator, that he never could have intended to include an adopted child in his beneficence. This case is cited here merely as high authority that the Legislature determines property succession, as was expressed by Judge Shauck, on page 116, when he said:

"We must presume that the will was drawn with the knowledge that as the testator's daughters were then living [the one in question was then eight years old], they at that time had no heirs at law, that those heirs would be selected by the law in force at the time of their death, when for the first time they could have heirs at law. It must also have been comprehended that the laws of descent and distribution have been constantly subject to change throughout the ages * * *. To the validity of the claim of the adopted daughter, it is not necessary that the testator should have had the particular intention that the fund should pass to a child by adoption. It is sufficient that she is the person designated by the law as the heir of the daughter and is thus within the terms of the gift over, the fund having accomplished the testator's dominant desire that the daughter should have an assured support during life."

Prior to 1932, an adopted child could inherit from but not through its adopting parents. Section 8030, General Code (109 Ohio Laws, 179). That year, by Section 10512-19, General Code (114 Ohio Laws, 320, 474), it was provided that such child "shall be invest-

ed with * * * the rights of inheritance to real estate, or to the distribution of personal estate on the death of such adopting parent or parents as if born to them in lawful wedlock.''

In 1944, that section was amended and became Section 10512-23, General Code (120 Ohio Laws, 440), but the above-quoted part was not changed.

In effect, the Tiedtke interests contend that although the Legislature can say who the heirs at law of a person shall be, it can not say who shall be a child of another as the term, ''child,'' is used in common speech and as it was used in the will of Harry Tiedtke in reference to his daughter Justina—in other words, that the Legislature could make Robert Millas Justina's heir at law, but it could not make him her child. That is true, but the testator in this case elected to provide in his will that the remainder should go to his ''heirs at law'' and as construed in 1929 this meant ''his heirs at law as of the date of the death of his daughter.'' Therefore, the Legislature could and did, as of the date of the daughter Justina's death in 1946, make Robert Millas, through her as his adopting parent, the sole heir at law of Harry Tiedtke. As such, Robert Millas takes the entire trust estate, including the income accumulated from the death of Justina Millas.

The estate of Justina Millas takes the income accumulated at the time of her death.

In the petition, instructions were requested with regard to the payment of certain legacies provided for in the will and codicils. On these matters, counsel have agreed on the proper directions to the trustee and these are approved and may be embodied in the judgment herein, the same as they appear in the judgment of the Probate Court.

*Decree accordingly.*

FESS and CONN, JJ., concur.